**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

IN RE:                                                                CASE NO. 06-60097

EZEKIEL NOLAN and YOLANDA NOLAN

DEBTORS                                                          CHAPTER 13

**MEMORANDUM OPINION**

This matter comes before the Court on the Debtors' Motion for the Immediate Turnover of Repossessed Property (Doc. 4).  The court has reviewed the record, including the Debtors' motion; the response filed by Transworld Financing Corporation ("Transworld") (Doc. 10); the affidavits of Ezekiel Nolan (Docs. 12, 21);and both parties' reply memoranda (Docs. 19, 20).  After consideration of the parties' positions stated therein and the argument of legal counsel presented at the hearings on March 23 and March 30, 2006, for the reasons set forth below, the court concludes that the Debtors' motion to turnover should be sustained.

The Debtor Ezekiel Nolan ("Debtor") purchased a 1999 Freightliner tractor truck from Rody Truck Center ("Rody") in Miami, Florida on or about July 12, 2005, according to Debtor's March 23, 2006 affidavit.  In addition to using the trade-in value of another tractor truck, Debtor financed $35,725.25 of the purchase price with Transworld, an entity affiliated with Rody, at an undisclosed interest rate for 33 months with payments of $1,575.00 per month beginning August 23, 2005.  The Retail Installment Contract between Debtor and Rody reflects that the total sale price of the financed truck was

$60,975.00, which was the amount financed, $35,725.25, plus the down payment of $19,000 (the value of the trade-in).  The total of the payments to be made by the Debtor was $51,975, which was the sum of the amount financed plus the credit cost to Nolan of $16,259.75.  The Debtors never received a copy of the Certificate of Title from the seller, and a Florida certificate of title was issued for the truck.  The Debtor submitted for filing of record a copy of a certificate of insurance reflecting that the vehicle is fully insured.

The Debtor defaulted by failing to make the required monthly payments under the contract and the truck was repossessed on March 10, 2006 in Greenville, Tennessee.  The Debtors filed their Chapter 13 petition on March 15, 2006 and filed the subject motion for turnover on the same day the petition was filed.  Two days prior to the bankruptcy filing, on March 13, 2006, Transworld sent a letter to the Debtor describing his right to redeem the collateral and providing him with notice of sale thereof in the event the Debtor did not exercise his right of redemption within ten (10) days of the letter.  Before the expiration of the redemption period, however, the Debtor filed his bankruptcy petition.

On March 29, 2006, the Debtor was alerted that a truck that appeared to be his was located at the London Truck Center in London, Kentucky, apparently having been left at the London Truck Center for the preceding four (4) days.  In its Supplemental Response to Motion for Turnover of Collateral (Doc. 19), filed on March 27, 2006 in compliance with the court's order to Transworld that it supplement the record with proof of perfection of its security interest in the truck, Transworld stated that the repossessed truck was "presently located at a K & K Enterprises lot in Orlando, Florida where it is

being held for Transworld Financing Corporation until this matter can be resolved." In fact, the truck was not in Orlando and had apparently been used to tow a school bus that displayed temporary tags in the back windshield issued to Rody. Debtor seeks immediate turnover of the truck in order that he may earn his income to fund his Chapter 13 payments.

Transworld's response to the Debtors' motion states that the truck is not subject to a turnover order because it is not property of the estate under *In re Kalter*, 292 F.3d 1350 (11th Cir. 2002). The case provides that under Florida law, which controls, according to Transworld, pursuant to the terms of the retail installment contract, ownership of a motor vehicle securing a creditor's claim passes from the debtor to the creditor once the motor vehicle has been repossessed. In *Kalter,* the court held that a Chapter 13 debtor in bankruptcy had no ownership interest in a repossessed vehicle sufficient to bring it back under a turnover order as property of the estate. The *Kalter* court recognized that while the question of whether a debtor's interest constitutes property of the estate is a federal question, the nature and existence of the debtor's right to property is determined by state law. *Id.*, at 1353.

The only possible sources of Florida law relating to the rights and obligations of a repossessed secured creditor, according to the Eleventh Circuit, were Florida's version of the UCC-Secured Transactions and Florida's Certificate of Title statute. *Id.* The court went on to say that the Florida UCC "contains no language addressing title, the transfer of title, or the ownership of repossessed collateral," providing no guidance as to who owned the debtors' vehicles upon repossession. *Id.,* at 1354. Without regard for the post-repossession rights and responsibilities created by the Florida UCC, including

the debtor's right of redemption or the creditor's duty to take reasonable care of the repossessed collateral and to provide notice of a commercially reasonable sale of the collateral, the court interpreted a statute permitting a creditor who has repossessed a motor vehicle to obtain a certificate of title to facilitate the creditor's exercise of its remedies under the UCC as the "transfer of ownership upon repossession" from the defaulting debtor to the repossessing creditor. *Id.*, at 1357-58.

The court made no mention of the current provision of the Florida UCC, Fla. Stat. Sec. 679.619, which must have been revised following the ***Kalter*** decision:

> (1) In this section, the term "transfer statement" means a record authenticated by a secured party stating:
> (a) that the debtor has defaulted in connection with an obligation secured by specified collateral;
> (b) that the secured party has exercised its post-default remedies with respect to the collateral;
> (c) that, by reason of the exercise, a transferee has acquired the rights of the debtor in the collateral; and
> (d) the name and mailing address of the secured party, debtor and transferee.
>
> (2) A transfer statement entitles the transferee to the transfer of record of all rights of the debtor in the collateral specified in the statement in any official filing, recording, registration, or certificate-of-title system covering the collateral. If a transfer statement is presented with the applicable fee and request form to the official or office responsible for maintaining the system, the official or office shall:
> (a) accept the transfer statement;
> (b) promptly amend its records to reflect the transfer; and
> (c) if applicable, issue a new appropriate certificate of title in the name of the transferee.
>
> **(3) A transfer of the record or legal title to collateral to a secured party under subsection (2) or *otherwise* is not of itself a disposition of collateral under this chapter and does not of itself relieve the secured party of its duties under this chapter.** (Emphasis added).

Apparently, ***Kalter*** was decided under former Article 9, which did not include section (3) as set forth above. As noted by the bankruptcy court from the District of Kansas in

***Estis v. Credit Union of Johnson County,*** 311 B.R. 592, 599 (Bankr. D.Kansas 2004), in addressing an argument by a party urging it to adopt the position espoused by the ***Kalter*** court, the addition of new section 9-619(c), or Fla. Stat. 679.619(3), "likely overrides any effect title-clearing statutes would have on ownership after repossession by a secured creditor." In ***Estis***, the court rejected the application of ***Kalter*** to the case before it and found that the mere pre-bankruptcy repossession of an automobile does not alter a debtor's interest in the property. ***Id.***

Regardless of the status of turnover law in the Eleventh Circuit, the court in ***Estis*** was convinced, as is this court, that any "residual doubt that [a] repossessed vehicle became part of the plaintiff's bankruptcy estate upon the commencement of [the] bankruptcy case is laid to rest upon review of the U.S. Supreme Court's holding in ***United States v. White Pools, Inc.,*** 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)." ***In re Estis,*** 311 B.R. at 600. In ***Whiting Pools***, the Supreme Court considered the authority of a Chapter 11 debtor-in-possession, under section 542 of the Bankruptcy Code, to demand the turnover of estate property that had been seized by the IRS to enforce its lien prior to the commencement of the Chapter 11 proceeding. ***Whiting Pools,*** supra, 462 U.S. at 199. The Supreme Court noted that section 541(a) provides that the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. ***Id.***, at 204. Accordingly, section 542(a) requires any entity (other than a custodian) holding any property of the debtor that the trustee can use under sec. 363 to turn that property over to the trustee. ***Id.***, at 205. The Supreme Court expressly found that, given the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls

within the rule and may therefore be drawn into the estate. *Id,* 205-06.

Furthermore, the Supreme Court noted that, as in the present case, at no point did the IRS' interest in the property seized exceed the value of the lien, since the IRS was obligated to return to the debtor any surplus from a sale. *Id.,* at 211; **See also,** Sale of the Repossessed Vehicle, Retail Installment Contract between the Debtor and Transworld, a copy of which is attached to Transworld's Supplemental Response to Motion for Turnover (Doc. 19). The Debtors' right to redeem as recognized by Transworld in its letter to the Debtor dated March 13, 2006 and the Debtors' right to any surplus after the application of proceeds from the repossession sale to the debt severely undermines Transworld's argument that repossession of the Debtors' truck served to transfer ownership from Debtors to Transworld. While the Florida law may facilitate transfer of title to a bona fide purchaser after a foreclosure sale when the debtor refuses to cooperate, the revision of Florida's version of the UCC makes it clear that such a transfer does not relieve the creditor of its duties, or a debtor of his rights, under Article 9.

Accordingly, for the reasons stated herein, the creditor Transworld Financing Corporation shall be required to immediately turn over to the Debtor the 1999 Freightliner tractor which it repossessed on March 10, 1999. A separate Order implementing this Opinion shall be entered herewith.


Copies to:

Ross E. Murray, Esq.
R. Aaron Hostettler, Esq.
Beverly M. Burden, Trustee

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Joseph M. Scott*
**Bankruptcy Judge**
**Dated: Wednesday, April 19, 2006**
**(jms)**